The case of the day, U.S. v. Hillman. Mr. Henderson. Thank you, Your Honor, and may it please the Court. Mr. Hillman was formerly known as Mr. Hillman. He's since changed his name to the last name of Bay, so I'll refer to him as Mr. Bay. This is a case of statutory interpretation that is particularly informed by the Supreme Court's recent decision in Bond v. United States. Bond is a very important case. The Supreme Court basically said, when interpreting criminal statutes in the federal system, we mean criminal activity and the state's authority to prosecute. And we will only read federal criminal statutes narrowly to further the interests of the federal government. That's particularly pertinent to Count 1 here. 18 United States Code Section 915, by its express language, prohibits impersonating a diplomatic official of a foreign government. Those are the words of the statute, and yet the district court chose to read out the words of a foreign government. There is no case law in this circuit. From other circuits, the main case comes from 1964 in the Fifth Circuit, and the Fifth Circuit, I think, inadvertently left out those words. And since then, the courts to have considered this provision have basically said, no, this is about impersonating a diplomat, it doesn't have to be of a foreign government. But the plain language of the statute requires that somebody pretend to be a diplomat of a foreign government. There's some reference to Mongolia, isn't there? There's a reference to Morocco. And that has to do with this group, which claims to be Moorish American citizens. They invoke symbols of ancient Egypt, of Morocco. The license plate said it was from the Republic of Moor. There is also reference to being from the Moorish Republic. But in the videotape and the transcript on the traffic stop, he told the officers he was from Morocco, and that he was an official diplomat. Well, he said he was a diplomat of the Moorish Republic. There is one reference to, I am from Morocco, yeah. And there was his fake license plate said diplomat, and he had a photo of the Moroccan flag underneath the license plate with Morocco on it. Right. And so that gets to the standard of review here. The question is whether there was sufficient evidence to establish beyond a reasonable doubt that he held himself out to be a diplomat from Morocco. And I think the government's argument is somewhat disingenuous when they repeatedly stressed at trial that he was pretending to be from a country that didn't exist. If that is so, if that's a reasonable argument, then the jury must have entertained a reasonable doubt as to whether he was making himself out to be from Morocco. Because if the government's right, then he was not making himself out to be from Morocco. He was pretending to be from a country that didn't exist. That was the bulk of the government's evidence. They called an agent specifically to say that he had consulted with the State Department and they couldn't find a Moorish Republic or a Republic of Moor. And so the standard is not, is there any evidence in the record that possibly could support this? It's whether the evidence in the record supports guilt beyond a reasonable doubt. And there is a reasonable doubt here. There's more than a reasonable doubt that he pretended to be from a non-existent entity. And that's what the government's argument, in fact, was. So unless the government's argument was unreasonable at trial, and I don't think that that's the case, there had to be a reasonable doubt as to what actually he was purporting to be from. But more than that, again, back to the statutory interpretation, the government says, well, it doesn't matter if you have to be from a foreign government or not. It's just about pretending to be a diplomat. That raises, I think, serious constitutional concerns. This statute is not a general fraud statute. If you impersonate somebody else, it's a federal crime. I don't think that could be a federal crime. Congress has limited, enumerated powers, one of which is to regulate in the area of foreign relations. But pretending to be a diplomat from a non-existent country, from Mars, from some place that's not a foreign government, doesn't implicate Congress's interest in regulating foreign relations. And I think, again, that's what the Bond case stands for, is to say that federal criminal statutes are to be narrowly construed. As to Section 915, there really are two primary cases from the Supreme Court, both over 60 years old, 70 years old, that we've identified in the briefs, Pierce and Barnow. And I think our discussion in the reply brief somewhat clarifies what those two cases stand for. But this case clearly falls under Pierce. In Pierce, the defendant made himself out to be an employee of the Tennessee Valley Authority. Everybody understood he was working for the government, but the Supreme Court reversed his conviction because the TBA was not technically part of the government, just as the Morris Republic is not a foreign government. Well, what do you do with that series of cases that the government cites from the Fourth Circuit that indicated they were a Morrish National Road Traveler, or the Fourth Circuit case where the woman appeared to be a diplomat duly accredited to the U.S. and the country wasn't even named, and that was a 915 violation. Or the other Fourth Circuit case where the defendant was convicted after posing as a diplomat from a fictitious country. Those are more recent than those Supreme Court cases. Obviously, you can still have good Supreme Court law and it can be very old, but that's how these circuits have interpreted that. I think that's right. I think that there are, I mean, I didn't represent those defendants, obviously, and I'm not sure the same arguments were raised, but I think that, again, they're relying on this old 1964 Fifth Circuit case in Cortes, where Cortes omitted that requirement of a foreign government when it listed what elements needed to be met. I'm not sure that the Fifth Circuit intended to do that. It's not really part of the main holding of the case or anything. But I think they're relying on that authority. I'd suggest that this circuit hasn't addressed it, and this circuit has the benefit of bond. Those other cases didn't have the benefit of bond. And I think bond necessitates that the court look very carefully at that. Do you want to save me time for rebuttal? I'll just say a brief word about Section 1017. I think that the primary interpretive canon here is that Congress says what it means to say, and when it knows how to include words in the statute and chooses to leave those words out, the court should respect that decision. And I think the government's interpretation that the seal of a department or agency refers to any purported seal, if I drew the seal of the Department of Justice, that would be the seal, I think expands the language past its breaking point, and I think it disregards it. Congress clearly knows how to include counterfeits, colorable imitations, forgeries, and it's done so in several offenses in Title 18. So for those reasons, we think that our reading is the preferred reading. And again, the principle of bond, I think, is consistent with the rule of lenity, where the statute is ambiguous, it's interpreted in favor of the defendant. So I'd ask this Court to reverse and remand for judgment of acquittal. Thank you. May it please the Court, my name is John Machacek, I am a, I'm representing the United States in this case, and I ask that the Court affirm the convictions below, and I'd like to start out by addressing your question, Judge Williams, with regard to the Morocco, whether or not the individual did mention Morocco, and he did mention it in the, when he was initially stopped by the police officers, and stating that the officer, because he was very confused about what exactly he had here, which he said several times, are you an official from another country, sir, and he says, I am from Morocco, right, what's your status with Morocco, I'm a Moorish American, and he subsequently asks, you're not a diplomat then, then he says, yes I am, you are an official diplomat, yes sir, and so this case, when Judge DiGiulio was ruling on the motion, the Rule 29 motion, with regard to the first count, Section 915, he specifically addressed whether or not there was sufficient evidence for the case to go to the jury, with regard to that issue of Morocco, he did not address this issue that's presented here, which has to do with whether or not Morocco was a, or he was representing a real country or not, the judge looked at that and said there is sufficient evidence here to go to the jury with regard to Morocco, because he, the Morocco, he claimed to be a citizen from Morocco, and there is a Moroccan flag on the license plate itself. But the government argued during the trial about the fictitious country more, right? Yes, they did make that argument at the end, during their closing arguments, but there was evidence to support on either theory in this case, that the defendant was guilty, and it's our contention that he would have been guilty as pretending to be a diplomat from Morocco, or pretending to be a diplomat from the Moor Republic. And with regard to the statutory interpretation question, Your Honor, Judge DiGiulio, following the example of those other cases that you mentioned, from the various circuits, Shabu, Charsthenko, Ferroni-Carli, said that the duly accredited to the United States language modifies the diplomat language, the person they're pretending to be, not foreign country, and that's appropriate, because diplomats are accredited, countries are recognized, that language applies to the individual, just like I have credentials as an assistant U.S. attorney, and just like diplomats when they come to the United States present their credentials to the United States government. So the interpretation of those courts of appeal, I think, is appropriate, given the statutory language, plus the Barnow case, which was cited in our brief, makes the very practical point that if you allow the easy device of impersonating non-officials or offices, you can easily sidestep the entire statute. Of course, that was looking at section 912, not section 19, as did Pierce, which was the subsequent case that my friend relies upon. So, the government's position is that the conviction is appropriate under either interpretation of that statute, whether it's an actual country or whether he's pretending. It's the pretending to be a diplomat that's the important thing, and that's what the other courts recognized. With regard to the second issue, unless the court has any questions, I'm just going to rely upon my brief. There was something, somebody referred to counterfeit, and I was sort of curious, if somebody tries to present a counterfeit $25 bill, for example, that doesn't exist, is it possible that someone could be convicted of counterfeiting if somebody didn't know there was such a thing and gave them change or something like that? It's not a question that's really brought up here, other than there was a mention of it somewhere, comparing it to counterfeiting. So that would be counterfeiting an object that doesn't actually exist. I think that if it was attempted to be depicted as a United States currency, then it would be... Even though there's no such thing. They used to joke about the $3 bill. Yes, Your Honor. So I'm only looking at it from what someone perceives, and whether it could, because they're trying to say, well, if the country doesn't exist, if somebody convinces somebody that does exist and gets away with it, I don't, I just... Well that's what, I mean, I think that's what Barnow is saying. You can't pretend, you can't avoid the statute by pretending to be a federal official that doesn't exist. And in the Pierce case, I mean, just as an aside, Judge Justice Douglas in his brief dissent said, you know, people think that the TVA is the government in that area, which is where I grew up, and I can relate to that as well. I mean, the TVA was seen as the government, part of the government, but Pierce was based on the fact that it wasn't actually a part of the government at the time, under Section 912. All right, if there are no other questions... All right, thank you. Thank you. And how much time does Mr. Henderson have? One minute, Mr. Henderson. Judge, my friend has just said that there was evidence to support either theory. I think that's the definition of reasonable doubt. If it can go either way, there is reasonable doubt. But Barnow and Pierce, I think, are very important to understand. Barnow says if you pretend to be a government official, even if that government official doesn't exist, but you're pretending to be employed by the government, that's a crime. Meanwhile Pierce says if you pretend to be something that either doesn't exist because it's not a government official, if you're pretending to be something that is not in the statute, that doesn't violate that statute. And so in this case, if you pretended to be a diplomat from Saudi Arabia, from a fictional town in Saudi Arabia that didn't exist, that would be pretending to be a diplomat of a totally fictional. On the other hand, the Pierce situation, where you pretend to be a diplomat of Mars, of some imaginary place, there's no federal interest in that. Congress doesn't have an interest in regulating made-up places. They have an interest in maintaining their foreign relations. And the history of the statute says that. The original caption to the statute was, Disturbance of Foreign Relations. That's what this statute intends. Thank you very much. All right. Thank you, Counsel. We will take the case under advisement.